FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 23, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

DONNA F.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

No. 2:18-CV-0017-JTR

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 14, 18. Attorney Christopher H. Dellert represents Donna F. (Plaintiff); Special Assistant United States Attorney Benjamin J. Groebner represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

**JURISDICTION**

On January 1, 2014, Plaintiff filed an application for disability insurance benefits, alleging disability since April 25, 2013, due to blindness in right eye, anxiety, arthritis, pain in legs, pain in lower back, and insomnia. Tr. 216, 232. Plaintiff's application was denied initially and upon reconsideration.

Administrative Law Judge (ALJ) R. J. Payne held a hearing on August 18, 2016, Tr. 59-116, and issued an unfavorable decision on October 7, 2016, Tr. 27-37. The Appeals Council denied review on November 15, 2017. Tr. 1-6. The

ORDER GRANTING DEFENDANT'S MOTION . . . - 1

ALJ's October 2016 decision thus became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on January 16, 2018. ECF No. 1, 4.

**STATEMENT OF FACTS**

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was born on January 31, 1958, and was 55 years old on the alleged onset date, April 25, 2013. Tr. 216. She completed high school and two years of college and has past relevant work as a book keeper and sales associate. Tr. 233-234.

Plaintiff's disability report indicates she stopped working on April 25, 2013, because of her conditions. Tr. 233. Plaintiff testified at the August 18, 2016, administrative hearing that she believed she could work the right type of job, a job that was slow-paced. Tr. 103. However, she clarified she did not believe she could work 40 hours a week, lift a 10-pound item a third of a day, or sit for six hours a day. Tr. 103-104. She indicated it would take a special job, one well designed for what she would be able to do. Tr. 105.

Plaintiff testified she is blind in her right eye and has vision issues with her left eye as well. Tr. 75-78. Her vision issues were caused by diabetes, which were fairly controlled at the time of the administrative hearing. Tr. 96. Because of her vision problems, she experiences headaches and has difficulty with depth perception. Tr. 78-80. She indicated she is able to read, but could not read for a long period of time (no longer than 20 to 30 minutes a day). Tr. 80-81. She has alleviated her vision difficulty by using magnifying glasses, placing Braille identifiers on appliances, and having larger font on her phone. Tr. 81-82. Plaintiff stated she has a driver's license and drives, but indicated she no longer drives at night. Tr. 84, 106-107.

Plaintiff testified she also has arthritis in her lower back and pain that radiates from her hip to the top of her calf. Tr. 89. She is not able to stand for longer than 30 minutes at a time, can walk one block with the assistance of a walking stick, and is able to sit for up to two hours. Tr. 90-91. She takes pain medication for her constant pain. Tr. 93.

Plaintiff additionally stated she has neuropathy in her feet. Tr. 98. The neuropathy was described as a feeling of numbness, burning and tingling in both feet. Tr. 98.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards
///

were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that physical or mental impairments prevent him from engaging in his previous occupation. 20 C.F.R. § 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that the claimant can perform other jobs present in significant numbers in the national economy. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. § 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On October 7, 2016, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date, April 25, 2013. Tr. 29.

At step two, the ALJ determined Plaintiff had the following severe impairments: lumbar degenerative disc disease, diabetes mellitus with history of diabetic retinopathy, right eye blindness, and obesity. Tr. 29.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 32.

///

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and determined she could perform light exertion level work with the following limitations: she can lift/carry up to 20 pounds occasionally and 10 pounds frequently; she has no limitations on sitting; she can stand and walk six hours total, in any combination, in an eight-hour workday with normal breaks; she is limited to occasional stooping, crouching, kneeling, crawling, balancing, and climbing of ramps and stairs; she is not able to climb ladders, ropes or scaffolds; she must avoid concentrated exposure to heavy industrial-type vibration; she must avoid all exposure to commercial driving, unprotected heights and hazardous machinery; she is not able to perform jobs requiring good depth perception or good bilateral peripheral vision; and she is not able to perform fine detailed work. Tr. 32.

At step four, the ALJ determined Plaintiff could perform her past relevant work as a sales clerk and bookkeeper as actually performed and as generally performed in the national economy. Tr. 36.

Alternatively, at step five, the ALJ determined that based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience and RFC, Plaintiff could perform other jobs present in significant numbers in the national economy, including the jobs of file clerk, data entry clerk and receptionist. Tr. 36-37.

The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from April 25, 2013, the alleged onset date, through the date of the ALJ's decision, October 7, 2016. Tr. 37.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred in this case by (1) improperly weighing the medical opinion evidence; and (2) failing to properly consider Plaintiff's subjective allegations. ECF No. 14 at 2.

# DISCUSSION[1]

**A.     Plaintiff's Symptom Testimony**

Plaintiff argues the ALJ did not provide specific, clear and convincing reasons for giving little credence to Plaintiff's allegations. ECF No. 14 at 8-13.

It is the province of the ALJ to make credibility determinations. *Andrews*, 53 F.3d at 1039. However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen*, 80 F.3d at 1281; *Lester*, 81 F.3d at 834. "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill*, 12 F.3d at 918.

In this case, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the medical and other evidence of record. Tr. 33.

The ALJ first indicated the objective medical evidence of record did not fully support the level of limitation Plaintiff claimed in this case. Tr. 33. The ALJ specifically held that that while Plaintiff has right eye blindness, diabetes mellitus,

---

[1]In *Lucia v. S.E.C.*, 138 S.Ct. 2044 (June 21, 2018), the Supreme Court held that ALJs of the Securities and Exchange Commission are "Officers of the United States" and thus subject to the Appointments Clause. To the extent *Lucia* applies to Social Security ALJs, the parties have forfeited the issue by failing to raise it in their briefing. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (the Court will not consider matters on appeal that were not specifically addressed in an appellant's opening brief).

lumbar degenerative disc disease and obesity, the record did not support a finding that these impairments prohibited Plaintiff from performing all work. Tr. 33. A lack of supporting objective medical evidence is a factor which may be considered in evaluating an individual's credibility, provided it is not the sole factor. *Bunnell v. Sullivan*, 347 F.2d 341, 345 (9th Cir. 1991) (Once a claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject the claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain.); *see also Robbins v. Soc. Sec. Admin.*, 466 F3d 880, 883 (9th Cir. 2006) (An ALJ may not make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence.").

As stated by the ALJ, no acceptable medical source of record has reported any disabling limitations caused by Plaintiff's physical impairments, nor has any acceptable medical source stated that Plaintiff cannot work at the sedentary or light exertional level. Tr. 34. With regard to Plaintiff's lumbar degenerative disc disease, there is no evidence of nerve root compression in the record, an examination with Arild Lein, M.D., revealed no neurologic deficits and intact motor function in the upper and lower extremities, Tr. 382-391 (Dr. Lein found Plaintiff capable of performing light level work, with some postural limitations), Plaintiff has presented with a normal gait and station and a musculoskeletal exam showed no obvious deformities, Tr. 397, 610, 616, 694, and Plaintiff had negative straight leg raises and only slightly diminished deep tendon reflexes on the left leg in February 2015, Tr. 621. The ALJ further noted there is no evidence Plaintiff's obesity has had a significant or quantifiable impact on pulmonary, musculoskeletal, endocrine, or cardiac functioning, and Plaintiff's diabetes mellitus has generally been controlled with medication, Tr. 96, 320, 469, 523, 621. Tr. 33.

Although the ALJ found Plaintiff has right eye blindness, the record reflects her left eye vision is 20/30 to 20/40 and her vision in both eyes is 20/40, Tr. 34,

338, 401, Plaintiff indicated she watched television up to 12 hours a day and was able to drive, Tr. 106-107, 383, 394, and Plaintiff was able to read a paragraph from a magazine during a psychiatric consultative examination, Tr. 394. Moreover, medical sources have opined that, despite visual difficulties, Plaintiff would be able to perform work as long as it did not require depth perception or good bilateral peripheral vision. Tr. 34, 70, 546. A review of the record demonstrates Plaintiff had greater visual abilities than she alleged in this case.

Based on the foregoing, the Court finds the ALJ did not err in determining the medical evidence is inconsistent with Plaintiff's allegations of disabling limitations.

The ALJ also indicated Plaintiff's activities of daily living were inconsistent with her assertions of totally disabling symptoms. Tr. 34. It is well-established that the nature of daily activities may be considered when evaluating credibility. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). While one does not need to be "utterly incapacitated" to be disabled, *id.*, it was proper for the ALJ to find Plaintiff's reports of activities such as doing yard work and laundry (consistent with light level work), Tr. 251, 265, 415, cooking, cleaning and shopping, Tr. 394, watching television up to 12 hours a day and driving a car, Tr. 106-107, 383, 394, and being able to read a paragraph from a magazine during a psychiatric consultative examination, Tr. 394, were inconsistent with the debilitating limitations she alleged and thus detracted from her overall credibility. Tr. 34. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (affirming the ALJ's adverse credibility determination and noting the claimant's assertion of disability was undermined by testimony about her daily activities, such as "attending to the needs of her two young children," cooking, and shopping); *see also Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) ("Even where [a claimant's daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally

debilitating impairment."). The Court also finds it significant that Plaintiff testified at the administrative hearing that she believed she would be able to work the right type of job, one designed for her capabilities (i.e. not fast-paced). Tr. 103-105. Her ability to perform the above activities is inconsistent with her claim of totally disabling symptoms.

The ALJ also noted that some of Plaintiff's allegations were inconsistent with the evidence of record. Tr. 33-34. Inconsistencies in a disability claimant's testimony support a decision by the ALJ that a claimant lacks credibility with respect to her claim of disabling pain. *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1986); *see Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (an ALJ may engage in ordinary techniques of credibility evaluation, such as considering claimant's reputation for truthfulness and inconsistencies in a claimant's testimony). When a claimant fails to be a reliable historian, "this lack of candor carries over" to other portions of his or her testimony. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

Plaintiff alleged serious vision problems, even reporting the need for Braille descriptions on her appliances. Tr. 81-82, 274. However, as indicated by the ALJ, Plaintiff's acknowledged ability to drive a car demonstrated she possessed a considerable amount of depth perception, peripheral vision and general visual ability. Tr. 34. Moreover, her ability to watch several hours of television each day and read a paragraph from a magazine during a psychiatric consultative examination also demonstrated greater visual abilities than alleged. The visual facilities exhibited by Plaintiff's continued ability to drive, watch television and read conflict with her allegations of disabling vision loss.

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson v. Perales*, 402 U.S. 389, 400 (1971). The Court has a

limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon *de novo* review. 42 U.S.C. § 405(g). After reviewing the record, the Court finds that the ALJ provided clear and convincing reasons, which are fully supported by the record, for discounting Plaintiff's subjective complaints. Accordingly, the ALJ did not err by finding Plaintiff's symptom allegations were not entirely credible in this case.

**B.  Medical Opinion Evidence**

Plaintiff asserts the ALJ also erred by discounting the treating opinion of Christopher Yang, M.D., in this case. ECF No. 14 at 5-8.

Dr. Yang completed a medical source statement form on July 21, 2016. Tr. 623-626. Although Dr. Yang opined that Plaintiff's visual impairment did not meet the criteria of Listings 2.02, 2.03, 2.04, or 2.05, he found Plaintiff had "severe" limitations on her ability to read, write, see detail, and perform assembly or other work requiring eye-hand coordination. *Id*.

The ALJ assigned "little weight" to the portion of the medical source statement of Dr. Yang that opined Plaintiff would have "severe" limitations on her ability to read, write, see detail, and perform assembly or other work requiring eye-hand coordination. Tr. 35.

If the opinion of a treating or examining physician is not contradicted, it can only be rejected with clear and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding a treating or examining

physician's opinion. *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-1464 (9th Cir. 1995); *Fair*, 885 F.2d at 604.

Here, the "severe" vision limitations opined by Dr. Yang were contradicted by other medical sources and evidence, including the medical expert, Minh D. Vu, M.D., Tr. 62-75,[2] state agency reviewing physicians, Tr. 139-143, and examining physician Lein, Tr. 382-391,[3] reports that her left eye vision is 20/30 to 20/40 and her vision in both eyes is 20/40, Tr. 34, 338, 401, and Plaintiff's activities of watching television up to 12 hours a day and driving, Tr. 106-107, 383, 394. Therefore, the ALJ needed to only provide specific and legitimate reasons for rejecting Dr. Yang's opinions.

The ALJ first noted Dr. Yang's opinion that Plaintiff would have "severe" visual limitations, Tr. 625, was vague. The undersigned agrees. It is undisputed that Plaintiff has a severe vision impairment; namely, right eye blindness, Tr. 29. However, the form Dr. Yang filled out does not specifically define "severe" or provide greater or lesser limitation options with respect to the assessed limitations.

///

---

[2]Dr. Vu testified as a medical expert at the August 18, 2016 administrative hearing, Tr. 62-75, and was accorded great weight by the ALJ, Tr. 34. Dr. Vu specifically stated that Plaintiff's right eye blindness did not meet or equal a listings impairment because Plaintiff's remaining vision in her left eye was 20/30 to 20/40. Tr. 64, 68. Dr. Vu restricted Plaintiff from working jobs requiring good depth perception, good bilateral peripheral vision, and fine detailed work. Tr. 70.

[3]The ALJ accorded "significant weight" to the March 17, 2014, opinions of medical examiner Dr. Lein. Tr. 35, 382-391. Dr. Lein opined that Plaintiff would be limited to light exertion level work with some postural and manipulative limitations. Tr. 390. Dr. Lein also noted Plaintiff's poor depth perception. Tr. 30, 390.

Moreover, the form does not provide an explanation for the "severe" findings or describe how Plaintiff's abilities to perform the particular tasks were restricted.

The ALJ next noted that the opinion was on a check-box form with no explanation to support the expressed limitation. Tr. 35. An ALJ's rejection of a check-box report that does not contain an explanation of the bases for the conclusions made is permissible. *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996). As discussed above, Dr. Yang's medical source statement provides no explanation to support the "severe" limitations assessed on the form.

Finally, the ALJ determined that Dr. Yang's opinion was inconsistent with other evidence. Tr. 35. As indicated throughout the ALJ's decision and this order, Plaintiff's ability to drive, watch several hours of television each day, and read a paragraph from a magazine during a psychiatric consultative examination demonstrated greater visual capabilities than Plaintiff alleged and Dr. Yang assessed.

Based on the foregoing, as concluded by the ALJ, the evidence of record does not support the "severe" limitations assessed by Dr. Yang on the medical source statement form. The Court finds that the ALJ provided specific and legitimate reasons, supported by substantial record evidence, for discounting that portion of Dr. Yang's report.

## C. Vocational Expert Testimony

Plaintiff next contends the ALJ erred by relying on a vocational expert's response to an incomplete hypothetical; a hypothetical that did not reflect all of Plaintiff's limitations. ECF No. 14 at 14-15. Plaintiff specifically asserts the ALJ should have included a limitation in Plaintiff's ability to read for extended periods in the hypothetical provided to the vocational expert. ECF No. 14 at 14; ECF No. 19 at 4.

As determined above, the ALJ did not err by rejecting the assessed "severe" limitations on Dr. Yang's medical source statement form and by finding Plaintiff's

symptom allegations were not entirely credible. As such, the ALJ's ultimate RFC determination is supported by substantial evidence and free of error.

The ALJ's RFC determination held that Plaintiff could perform light exertion level work with certain postural, environmental, and vision (no job requiring good depth perception or good bilateral peripheral vision and no fine detailed work) restrictions. Tr. 32. At the administrative hearing held on August 18, 2016, the vocational expert testified that with the restrictions assessed by the ALJ, Plaintiff retained the capacity to perform her past relevant work (sales clerk and bookkeeper) as well as a significant number of jobs existing in the national economy, including the positions of file clerk, data entry clerk and receptionist. Tr. 109-113. Since the vocational expert's testimony was based on a proper RFC determination by the ALJ, the ALJ did not err at steps four and five of the sequential evaluation process in this case.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of legal error. Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 18**, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

DATED January 23, 2019.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE